**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Katty D.,**

**Plaintiff,**

**-against-**

**Commissioner of Social Security,**

**Defendant.**

**1:25-cv-07391 (SDA)**

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Katty D. ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security (the "Commissioner") that partially denied Plaintiff's application for Disability Insurance Benefits ("DIB"). (Compl., ECF No. 1.) Now before the Court is Plaintiff's motion to reverse the decision of the Commissioner and remand this action for further proceedings. (Pl.'s Mot., ECF No. 10.) For the reasons set forth below, Plaintiff's motion is GRANTED.

## BACKGROUND

## I. Procedural Background

Plaintiff filed an application for DIB on November 15, 2021, with an alleged onset date of May 30, 2020. (Administrative R., ECF No. 7 ("R.") 77.) Plaintiff's date last insured was December 31, 2024.[1] (R. 17.) The Social Security Administration ("SSA") initially denied Plaintiff's application on June 17, 2022 and, upon reconsideration, on July 13, 2023. (R. 102-07, 111-13.) On September

[1] To qualify for DIB, a claimant both must be disabled and insured for benefits. 42 U.S.C. § 423(a)(1)(A) & (E); 20 C.F.R. §§ 404.101, 404.120 & 404.315(a). The last date a person meets these requirements is commonly referred to as the date last insured.

8, 2023, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (R. 114.) An administrative hearing was held on June 23, 2024[2] before ALJ Kimberly Schulz. (R. 44-75.) In a partially favorable decision dated November 19, 2024, ALJ Schulz found Plaintiff not disabled prior to October 18, 2024, but found that she became disabled on that date. (R. 16-29.) Thereafter, Plaintiff requested review of the ALJ's decision from the Appeals Council. (R. 204-06.) The Appeals Council denied her request on July 14, 2025. (R. 1-5.) This action followed.

## II. Non-Medical Evidence

Born on October 19, 1974, Plaintiff was 45 years old on the alleged onset date and 50 years old on the date of the ALJ's decision. (R. 76.) Plaintiff has at least a high school education and does not have past relevant work. (R. 27, 52, 63-64, 88.)

## III. Medical Evidence Before the ALJ

Prior to her alleged onset date, Plaintiff had undergone multiple surgeries, including for L5-S1 hernia desiccated disc in February 2019. (R. 527.) On May 27, 2020, Plaintiff saw Dr. Bienvenido Fajardo for a follow-up appointment regarding hypertension anemia and migraine headaches. (R. 527-30.) Dr. Fajardo noted generalized muscle pain, bilateral plantar pain and insomnia. (R. 527.) He referred Plaintiff to podiatry and radiology for further care with respect to her foot pain and added a medication for better control of her blood pressure. (R. 529.)

On October 5, 2020, Plaintiff saw Dr. Eduardo Del Orbe for a follow-up appointment regarding hypertension and fibromyalgia. (R. 524-26.) Plaintiff complained of palpitations at rest and on exertion with some chest pain and feelings like she could not walk sometimes. (R. 524.)

[2] In her Decision denying benefits, the ALJ referred to the date of the hearing as July 23, 2024 (*see* R. 16), which appears to have been an error.

She also complained of diffuse pain all over her body. (*Id.*) Dr. Del Orbe referred Plaintiff to cardiology for further evaluation. (R. 525.) At a follow-up appointment on January 4, 2021, Plaintiff continued to complain of chronic diffuse body aches and pain. (R. 521.) Dr. Del Orbe noted that she was seeing Dr. Casilda M. Balmaceda for management of those symptoms. (*Id.*) Dr. Del Orbe noted that Plaintiff had multiple medical issues, including migraine headaches, GAD (generalized anxiety disorder), MDD (major depressive disorder), and possible fibromyalgia and that they discussed referrals to PT (physical therapy) and psychiatry for CBT (cognitive behavioral therapy), as well as possible implementation of home remedies such as yoga or meditation. (R. 522.) Dr. Del Orbe also noted the importance of having someone from psychiatry manage her multiple pain medications and antidepressants. (*Id.*) Dr. Del Orbe continued her current management but referred her to psychiatry for evaluation and further management recommendations with a plan for her to return for follow-up in three months. (*Id.*)

Plaintiff saw Dr. Del Orbe again on April 5, 2021 for an annual physical. (R. 517-20.) She continued to report generalized body aches and pain, mostly limited to musculoskeletal, with no specific joint involvement. (R. 517.) Otherwise, she had no active complaints. (*Id.*) Dr. Del Orbe noted that she still was following with Dr. Balmaceda and had an EMG[3] coming up. (*Id.*)

Dr. Del Orbe indicated that he again would refer Plaintiff to Rheumatology, Physical Therapy and Psychiatry, noting that they had discussed again that she needed these three for possible fibromyalgia workup and treatment. (R. 519.) He further noted that she would continue to follow up with neurology for migraines. (*Id.*)

---

[3] "EMG refers to electromyography which is a diagnostic test that records the electrical activity of muscles in order to test for muscle disorders." *Batista v. Comm'r of Soc. Sec.*, No. 16-CV-03629 (KAM), 2018 WL 4964102, at *4 n.13 (E.D.N.Y. Oct. 15, 2018) (cleaned up).

On July 7, 2021, Plaintiff saw Dr. Bienvenido Fajardo for evaluation of hypertension, fibromyalgia and reported continuing complaints of left side body pain and leg pain. (R. 513-16.) An EEG[4] performed by Plaintiff's neurologist, Dr. Balmaceda on July 26, 2021, was within normal limits with no focal abnormality of seizure discharges. (R. 558.)

On August 2021, Plaintiff saw Dr. Gerardo Tapia for a psychiatric evaluation. (R. 588.) Dr. Tapia noted that Plaintiff had been referred for sadness and was anxious and worried about the future. (*Id.*) Dr. Tapia assessed major depressive disorder, recurrent moderate and prescribed Trazodone. (*Id.*) Dr. Tapia saw Plaintiff one week later for a follow-up appointment. (R. 585-86.) Plaintiff reported feeling "so-so." (R. 585.) Dr. Tapia noted that Plaintiff has difficulty sleeping and an anxious mood. (*Id.*) He refilled her prescription with a plan to follow-up in two months. (*Id.*)

Plaintiff's next appointment with Dr. Tapia was on October 7, 2021. (R. 583-84.) Plaintiff reported feeling "no good" and Dr. Tapia noted sad affect. (R. 583.) Plaintiff reported having more body aches and had stopped taking Trazodone due to weakness. (*Id.*) Plaintiff agreed to see a pain management doctor for opioid treatment and Dr. Tapia prescribed Paroxetine. (*Id.*)

On February 9, 2022, Plaintiff saw Dr. Melissa Fajardo[5] complaining of palpitations and for follow up regarding hypertension and fibromyalgia. (R. 503-05.) Dr. Fajardo referred Plaintiff to cardiology for further follow up. (R. 505.)

[4] "An EEG detects electrical activity in your brain using small, metal discs (electrodes) attached to your scalp*." Boland v. Comm'r of Soc. Sec.*, No. 20-CV-07312 (ER) (BCM), 2022 WL 977066, at *2 n.2 (S.D.N.Y. Mar. 1, 2022), *report and recommendation adopted*, 2022 WL 973504 (S.D.N.Y. Mar. 31, 2022) (internal quotation marks & citation omitted).

[5] To avoid any reader confusion, the Court notes that there are two doctors with the surname Fajardo, *i.e.*, Bienvenido and Melissa.

On February 21, 2022, Plaintiff underwent an electrodiagnostic study of the upper extremities, which revealed bilateral C6 cervical radiculopathy. (R. 551-54.) On February 23, 2022, Plaintiff saw Dr. Melissa Fajardo for a follow-up appointment regarding hypertension and fibromyalgia. (R. 501-02.) Dr. Fajardo noted iron deficiency and referred her to hematology for follow-up. (R. 502.) On March 1, 2022, Plaintiff had an X-ray of the skull, which was unremarkable. (R. 555, 589.) Plaintiff saw Dr. Tapia for a psychiatric follow-up appointment on May 5, 2022. (R. 581-82.) Dr. Tapia noted joint pain and started Plaintiff on Mirtazapine. (R. 581.)

On June 8, 2022, Plaintiff saw Dr. Manual Paz for an internal medicine consultative examination. (R. 433-37.) Dr. Paz noted that Plaintiff was a “poor historian.” (R. 433.) She reported having pain “all over,” which she indicated was 10/10 with no alleviating factor and got worse with movement. (*Id.*) Plaintiff reported that her mother helped her with cooking, cleaning and laundry but she showered and dressed independently. (R. 434.) Dr. Paz noted that Plaintiff appeared to be in no acute distress; her gait was antalgic with and without a rolling walker, which was medically necessary; she could not walk on heels and toes; she could not squat due to pain; her stance was normal; she did not need help changing for the exam or getting on and off the exam table; she was able to rise from chair without difficulty; and her cooperation and effort were good. (*Id.*) Dr. Paz found reduced range of motion in the cervical spine, shoulders, hips and knees; strength 5/5 in upper and lower extremities; hand and finer dexterity intact; grip strength 5/5 bilaterally. (R. 435-36.) An x-ray of the lumbar spine was negative. (R. 436.) Based upon his examination, Dr. Paz opined that Plaintiff had marked limitations for bending, lifting, carrying, prolonged standing, prolonged sitting, prolonged walking, pushing, pulling, reaching overhead, climbing stairs, kneeling and crouching. (*Id.*)

Also on June 8, 2022, Plaintiff saw Arelene Rupp-Goolnich, Ph.D., for a consultative psychiatric evaluation. (R. 439-443.) Under current functioning, Dr. Rupp-Goolnich noted difficulty falling asleep, depressive symptoms and, on occasion, short-term memory deficits. (R. 439.) On mental status examination, Plaintiff was cooperative with adequate manner of relating. (R. 440.) Dr. Rupp-Goolnich noted that her thoughts were coherent and goal directed thoughts, affect was full range, reported mood was tired and in pain, attention and concentration were intact, recent and remote memory skills were intact, cognitive functioning appeared to be average and insight and judgment were good. (R. 440-41.) Dr. Rupp-Goolnich opined that Plaintiff had no limitations in her ability to understand, remember, or apply simple directions and instructions; understand, remember, or apply complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, co-workers, and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; regulate- emotions, control behavior, and maintain well-being; maintain personal hygiene and appropriate attire; and awareness of normal hazards and taking appropriate precautions. (R. 441-42.)

On June 15, 2022, Plaintiff saw Dr. Melissa Fajardo for a preventive care and wellness visit. (R. 496-500.) Dr. Fajardo referred Plaintiff to pain management, physical therapy and ophthalmology. (R. 500.) During her next psychiatric appointment with Dr. Tapia on July 25, 2022, Plaintiff reported pain and Dr. Tapia adjusted her medications, prescribing Vrylar. (R. 579-80.) The following week, Plaintiff reported less pain with Vrylar but reactivated gastritis. (R. 578.) Dr. Tapia changed her prescription to Latuda. (*Id.*) At appointments on August 25, 2022 and September 1, 2022, Plaintiff reported feeling “better” and “good” with less pain. (R. 574-77.)

On September 7, 2022, Plaintiff saw Dr. Melissa Fajardo for a follow-up appointment regarding hypertension. (R. 492-95.) Plaintiff continued to report chronic pain, worse at her lower back and paresthesia. (R. 492.) Dr. Fajardo noted that Plaintiff was following with pain management with a plan for a spine MRI. (*Id.*) Dr. Fajardo also noted that Plaintiff continued to need assistance with activities of daily living given chronic pain. (R. 494.) On October 5, 2022, Plaintiff saw Dr. Fajardo to discuss her lab results. (R. 489-91.) The next day, she saw Dr. Tapia for a follow-up appointment and he refilled her prescriptions. (R. 572-73.)

On November 26 2022, Plaintiff saw Dr. Balmaceda for a follow-up appointment complaining of headaches. (R. 543-46.) Plaintiff reported worsening headaches with nausea, severe dizziness. (R. 543.) Dr. Balmaceda also noted that Plaintiff had experienced photophobia and odontophobia. (*Id.*) Dr. Balmaceda started Plaintiff on additional medications and noted a plan for a “vng” or videonystagmography, to test for balance disorders. (R. 545.) Dr. Balmaceda also assessed lumbosacral root disorder and prescribed Gabapentin. (*Id.*)

On January 11, 2023, Plaintiff saw Dr. Melissa Fajardo for a routine follow-up appointment regarding asthma and hypertension. (R. 485-88.) Plaintiff complained of lower back pain. (R. 485.) Dr. Fajardo ordered lab tests and refilled Plaintiff’s medications. (R. 486.)

On February 27, 2023, Plaintiff saw Dr. Joseph Charles for a psychiatry appointment at the same clinic where she had been seeing Dr. Tapia. (R. 569-71.) Dr. Charles assessed major depressive disorder, recurrent moderate and continued her prescription for Vrylar. (R. 569-70.)

On March 23, 2023, Plaintiff had a mini stroke and was admitted to the hospital. (R. 481.) On April 3, 2023, Plaintiff saw Dr. Bienvenido Fajardo for follow-up after being discharged from the hospital. (R. 481-84.) Dr. Fajardo reviewed and reconciled her medications and referred her

to cardiology for assessment of near syncope and palpitations. (R. 482.) He also ran additional lab tests and referred her to otolaryngology for ENT and vertigo. (R. 483.)

On April 21, 2023, Plaintiff saw Dr. Laiping Xie for an internal medicine consultative examination. (R. 462-66.) Dr. Xie noted that Plaintiff appeared to be in no acute distress; her gait was normal; she had started using a wheelchair five years ago because of poor balance, which was medically necessary; she was unable to walk on heels and toes; she had difficulty squatting; her stance was normal; she did not need help changing for the exam but had mild difficulty getting on and off the exam table; she was able to rise from chair without difficulty; and her cooperation and effort were good. (R. 463.) Dr. Xie found reduced flexion in the lumbar spine; reduced range of motion in the shoulders, hips and knees; and trigger points evidenced in the occiput, bilateral trapezius, supraspinatus, second rib, both knees, and both lateral epicondyles for a total of 12. (R. 464.) Dr. Xie also noted strength 5/5 in upper and lower extremities; hand and finer dexterity intact; grip strength 5/5 bilaterally. (R. 465.) An x-ray of Plaintiff's lumbar spine revealed moderate degenerative changes at the L5-S1 level, and mild degenerative changes at the T1-L2 level. (R. 466.) On the basis of his evaluation, Dr. Xie opined that Plaintiff should avoid heavy exertion; had moderate to marked limitation with lifting, carrying, pulling, pushing, reaching over her head, prolonged standing, walking, climbing stairs, squatting, and bending; may experience schedule interruptions given her diagnosis of migraine headache; and should avoid activities that may put her at risk for a fall. (R. 465.)

Also on April 21, 2023, Plaintiff saw Aris Peguero, Psy.D. for a consultative psychiatric evaluation. (R. 468-72.) Plaintiff reported that she often felt depressed, cried a lot, withdrew socially, had lost interest in things that she used to like and sometimes did not feel like taking a

shower or grooming herself, even though she had to because she had a young child. (R. 469.) Plaintiff stated that she had had no suicidal or homicidal ideation in the past 30 days, although she said that at times she wondered why she was alive. (*Id.*) Plaintiff reported panic attacks and sometimes felt like she was choking and could not breathe and had heart palpitations, which could happen at any time but were exacerbated by pain. (*Id.*) Plaintiff also reported that she was concerned about her ability to recall things. (*Id.*)

On mental status examination, Dr. Peguero noted that Plaintiff had a cooperative demeanor, a fair to poor manner of relating, and that she was overcome with emotions throughout the whole evaluation and at times had to stop to catch her breath because of her distress. (R. 469.) Dr. Peguero noted that Plaintiff's posture was tense, her quality of voice was clear but pressured, her thought process was clear and coherent, her affect was depressed, she reported feeling anxious and down at the same time and her attention and concentration were impaired due to emotional distress. (R. 470.) Dr. Peguero found that Plaintiff's recent and remote memory skills were mildly impaired, her cognitive functioning was estimated to be below average, and her insight and judgment were fair. (R. 470-71.)

Dr. Peguero opined that Plaintiff had no limitations in understanding, remembering or applying simple directions and instructions and in the awareness of normal hazards and taking appropriate precautions; mild limitations using reason and judgment to make work-related decisions, interacting adequately with supervisors, coworkers and the public, and maintaining personal hygiene and appropriate attire; and moderate limitations in understanding, remembering, or applying complex directions and instructions, sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine and regular attendance at

work, regulating emotions, controlling behavior, and maintaining wellbeing. (R. 471.) Dr. Peguero opined that these difficulties were caused by emotional distress secondary to pain perception and depressive moods and that the results of his examination appeared to be consistent with psychiatric problems, which may significantly interfere with Plaintiff's ability to function on a daily basis. (R. 471-72.)

On July 5, 2023, Plaintiff saw Dr. Bienvenido Fajardo for an annual physical examination. (R. 476-80.) Dr. Fajardo referred Plaintiff to cardiology for evaluation and to bariatric surgery and refilled her medications. (R. 478-79.)

On July 20, 2023, Plaintiff saw Dr. Balmaceda for a follow-up visit. (R. 547-50, 559-62.) Plaintiff reported generalized pain throughout her body and pain in all her joints, which made it difficult for her to walk, and shortness of breath for several weeks. (R. 547.) She also reported headaches, forgetfulness, and that she was sad and depressed. (R. 548.) Dr. Balmaceda added an assessment for mild cognitive impairment on uncertain or unknown etiology and ordered brain imaging. (R. 550.)

On July 31, 2023, Plaintiff saw psychiatrist Dr. Charles for a follow up appointment. (R. 563-65.) Plaintiff reported that she did not feel well and felt depressed. (R. 563.) On examination, Dr. Charles noted sad mood, appropriate affect, thoughts that people wanted to hurt her, intense preoccupation with financial and physical problems, good concentration, good recent memory, fair calculations, fair abstraction, good insight and judgment and good impulse control. (R. 564.) Dr. Charles started Plaintiff on Escitalopram and Risperidone and discontinued Vrylar which was not covered by her insurance. (*Id.*)

Plaintiff saw Dr. Charles again on August 30, 2023. (R. 566-68.) She reported feeling "so so." (R. 566.) On examination, Dr. Charles noted similar findings, but that paranoid ideas had subsided and poor abstraction.(R. 566-67.) He increased Plaintiff's dose of Escitalopram. (R. 567.)

Between September 2023 and August 2024, Plaintiff treated with Dr. Francisco Guzman. (R. 592-1355.) Plaintiff underwent laparoscopic gastric bypass surgery on May 30, 2024. (*See* R. 596.)

## IV. <u>The June 23, 2024 Administrative Hearing</u>

Plaintiff, represented by counsel, appeared on June 23, 2024 for an administrative hearing before ALJ Schulz. (R. 44-75.) The hearing was held via telephone. (R. 47.)

Plaintiff testified that she stopped working in 2020 due to pain. (R. 53.) She described her pain as a strong pain in her bones, similar to arthritis, and testified that she took medication but it was no longer working. (*Id.*) Plaintiff testified that she had chronic migraines, which were triggered by light, loud noise, eating habits or diabetes. (R. 54.) She also testified that she had asthma and high blood pressure, which caused dizziness and other symptoms. (R. 54-55.) Plaintiff testified that she received mental health treatment for anxiety and depression, including taking medications and meeting with a psychiatrist once per month. (R. 55-56.)

Plaintiff testified that she had difficulties sitting and could sit 10 to 15 minutes before having to change position and could stand for two to three minutes before having to change position. (R. 56-57.) She could only walk half a block before needing to stop due to hip and back pain. (R. 57.) She also testified to difficulty bending, following her back surgery in 2019 and that some days she was not able to get out of bed. (R. 57-58.) In response to questions from her attorney, Plaintiff further testified that she used a walker at home to help with balance issues

and she had pain in her fingers and hands, which caused her to have trouble holdings things and with fine motor skills. (R. 59-60.) Plaintiff also testified that she experienced neck pain and had trouble reaching overhead with both arms. (R. 60-61.)

Vocational expert ("VE") Yaakov Taitz also testified at the hearing. (R. 63.) The ALJ first asked the VE to assume a hypothetical individual with the same age, education and past work as Plaintiff, with the capacity for sedentary exertion who could occasionally climb ramps and stairs, stoop, kneel, crouch, crawl and perform bilateral overhead reaching; could never climb ladders, ropes or scaffolds; could tolerate exposure to moderate noise; could not have exposure to bright lights, but normal home and office lighting was acceptable; could not have concentrated exposure to fumes, odors, dusts, gases to other respiratory irritants; could not have exposure to unprotected heights or moving mechanical parts; could understand, remember and carry out simple instructions; and could have occasional interaction with the supervisors, coworkers and the public. (R. 64-65.) The VE testified that such hypothetical individual could perform the jobs of ticket counter (DOT No. 219.587-010), surveillance system monitor (DOT No. 379.367-010) and document preparer (DOT No. 249.587-018). (R. 65.) The VE further testified that if the hypothetical individual were off task 15% of the workday, those jobs would not be available. (R. 66.) In addition, if the individual in the first hypothetical were to be absent up to three times a week from work, the VE testified that no jobs would be available. (*Id.*)

In response to questions from Plaintiff's attorney, the VE testified that needing a walker would not impact the jobs he identified because they were in one location and that all of the jobs would be available even if the person could not stand or walk and would need to sit for eight hours. (R. 67-69.) If the first hypothetical individual also were to be limited to occasional handling,

fingering and feeling, the VE testified that the ticket counter and document prepared positions would be eliminated. (R. 69.) The VE also testified that up to ten percent off task would be tolerated and that the surveillance system monitor job might require a person to be on task more. (R. 70-71.)

## V. The ALJ's Decision

Applying the Commissioner's five-step sequential evaluation, *see infra* Legal Standards, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 30, 2020. (R. 19.) At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, asthma, headaches, obesity, fibromyalgia, anxiety disorder and depressive disorder. (*Id.*) The ALJ also found that Plaintiff had non-severe impairments of hypertension, gastritis and bilateral hand pain and that an alleged stroke was not a medically determinable impairment. (*Id.*)

At step three, the ALJ found that since May 30, 2020, Plaintiff had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listings 14.09 and 3.03. (R. 20-21.) With respect to Plaintiff's mental impairments, the ALJ also considered Listings 12.04 and 12.15. (R. 21.) As to paragraph B criteria,[6] the ALJ found that, prior to October 18, 2024 (the date the ALJ found Plaintiff to have established disability), Plaintiff had moderate limitations in

[6] The ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). The special technique first requires the ALJ to assess the claimant's degree of functional limitation resulting from a mental impairment in four "broad functional areas" identified in the "paragraph B" of the adult mental disorders listings. *See* 20 C.F.R. § 404.1520a(c)(3). Those four functional areas are: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.*

understanding, remembering or applying information; interacting with others and concentrating, persisting or maintaining pace, and a mild limitation with adapting or managing oneself. (R. 20-21.) The ALJ then addressed paragraph C criteria, finding that the evidence failed to establish the presence of such criteria as there was no evidence that Plaintiff had required a highly structured setting or that she had only a minimal capacity to adapt to changes in her environment. (R. 22.)

Prior to proceeding to step four, the ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a),[7] except she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; can perform occasional bilateral overhead reaching; can tolerate exposure to moderate noise; can have no exposure to extreme bright lights like headlights, stage lights, and inspection lights, but normal home and office lighting is acceptable; can have no concentrated exposure to fumes, odors, dusts, gases, and respiratory irritants; can have no exposure to unprotected heights and moving mechanical parts; can understand, remember, and carry out simple instructions; and can have occasional interaction with supervisors, coworkers, and the public. (R. 22.)

At step four, the ALJ found that Plaintiff had no past relevant work. (R. 27.) The ALJ further found that, on October 18, 2024, Plaintiff's age category changed from "a younger individual age 45-49" to "an individual closely approaching advanced age." (R. 27 (citing 20 C.F.R. § 404.1563.)

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

At step five, the ALJ considered Plaintiff's age, education, work experience and RFC and concluded based upon the VE's testimony, that prior to October 18, 2024, that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including ticket counter (DOT Code 219.587-010), surveillance system manager (DOT Code 379.367-010) and document preparer (DOT Code 249.587-018). (R. 27-28.) Therefore, the ALJ found that Plaintiff was not under a disability prior to October 18, 2024. (R. 28.)

Beginning on October 18, 2024 when Plaintiff's age category changed, the ALJ determined that there were no jobs existing in the national economy that Plaintiff could perform. (R. 28.) Accordingly, the ALJ found Plaintiff disabled as of that date. (*Id.*)

**LEGAL STANDARDS**

## I. Standard Of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

"The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." *Ulloa v. Colvin*, No. 13-CV-04518 (ER), 2015 WL 110079, at *6 (S.D.N.Y. Jan. 7, 2015) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision[.]" *Id.*; *accord Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). A court must set aside legally erroneous agency action unless "application of the correct legal principles to the record could lead only to the same conclusion," rendering the errors harmless. *Garcia v. Berryhill*,

No. 17-CV-10064 (BCM), 2018 WL 5961423, at *11 (S.D.N.Y. Nov. 14, 2018) (quoting *Zabala v. Astrue*, 595 F. 3d 402, 409 (2d Cir. 2010)).

Absent legal error, the ALJ's disability determination may be set aside only if it is not supported by substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (vacating and remanding ALJ's decision). "Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 447-48 (cleaned up). "But it is still a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Id.* at 448 (quoting *See Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Id.* (emphasis in original).

## II. Determination Of Disability

A person is considered disabled for benefits purposes when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

In determining whether an individual is disabled, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted).

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . [continuous period of 12 months], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 [(the "Listings")] . . . and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4) (internal citations omitted).

If it is determined that the claimant is or is not disabled at any step of the evaluation process, the evaluation will not progress to the next step. 20 C.F.R. § 404.1520(a)(4).

After the first three steps (assuming that the claimant's impairments do not meet or medically equal any of the Listings), the Commissioner is required to assess the claimant's RFC "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 404.1520(e). A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

The claimant bears the burden of proof as to the first four steps. *See Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). It is only after the claimant proves that he cannot return to work that the burden shifts to the Commissioner to show, at step five, that other work exists in the national and local economies that the claimant can perform, given the claimant's RFC, age, education, and past relevant work experience. *See id.* at 51-52.

## III. Regulations Regarding Consideration Of Medical Opinions And Prior Administrative Medical Findings

Under the regulations applicable to Plaintiff's claim, the ALJ considers five factors in evaluating the persuasiveness of medical opinions: (1) supportability; (2) consistency; (3) relationship of the source with the claimant, including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship and whether the relationship is an examining relationship; (4) the medical source's specialization; and (5) other factors, including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Using these factors, the most important of which are supportability and consistency, the ALJ must articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id.* § 404.1520c(b).

With respect to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). While the ALJ "may, but [is] not required to, explain how [she] considered" the factors of relationship with the claimant, the medical source's specialization, and other factors, the ALJ "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings[.]" *Id.* § 404.1520c(b)(2).

An ALJ must provide sufficient explanation to allow a reviewing court to "trace the path of [the] adjudicator's reasoning[.]" *Amber H. v. Saul*, No. 20-CV-00490 (ATB), 2021 WL 2076219, at *6 (N.D.N.Y. May 24, 2021) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017) ("We expect that the articulation requirements in these final rules will allow a ... reviewing court to trace the path of an adjudicator's reasoning[.]")). An ALJ commits procedural error by failing to explain how he considered the supportability and consistency of medical opinions in the record. *See Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022). A reviewing court still may affirm "if 'a searching review of the record' assures [it] 'that the substance of the [regulation] was not traversed.'" *Id.* (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)) (cleaned up).

## DISCUSSION

Plaintiff argues that the ALJ's RFC determination that, between the alleged onset date of May 30, 2020 and October 18, 2024, she could perform a reduced range of sedentary work is not supported by substantial evidence. (Pl.'s Mem., ECF No. 11, at 5, 13-17.) Specifically, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ: (1) failed to incorporate or reconcile the limitations assessed by Dr. Paz and Dr. Xie with the RFC determination; (2) failed to consider the limiting effects of Plaintiff's severe depressive disorder and anxiety disorder; and (3) failed to meaningfully account for Plaintiff's severe migraine headaches in the RFC determination. (*Id*. at 13-17.) In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence. (Comm'r Br., ECF No. 12, at 6-12.)

### I. Consideration Of Dr. Paz And Dr. Xie Opinions

As set forth above, the ALJ found the opinions of Dr. Paz and Dr. Xie somewhat persuasive, noting that the terms moderate and marked were vague, non-vocational terms. (R. 26.) Nonetheless, the ALJ explained that the opinions remained generally persuasive and indicated that she accounted for the areas of limitations assessed in the RFC, except for the schedule limitation indicated by Dr. Xie. (*Id.*)

The ALJ found that Dr. Xie's opinion that Plaintiff "may experience schedule interruptions given her diagnosis of migraine headaches" was not supported by the record. (R. 26 (quoting R. 465).) However, when discussing the medical evidence regarding Plaintiff's migraines earlier in her decision, the ALJ cited to Plaintiff's reports in November 2022 that Plaintiff experienced daily headaches, which would last for three to four hours and were accompanied by nausea and

dizziness and that she reported to Dr. Xie that she had headaches almost daily with pain, double vision, dizziness and nausea. (R. 23 (citing R. 462, 543).) The ALJ also indicated that she considered SSR 19-4p which states that "symptoms of a primary headache disorder, such as photophobia, may cause a person to have difficulty sustaining attention and concentration[.]" Soc. Sec. Ruling, SSR 19-4p; Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders, SSR 19-4P (Aug. 26, 2019). The ALJ cited records showing that Plaintiff had undergone treatment and taken variety of medications for migraines and credited evidence that Plaintiff was sensitive to noise and light. (R. 23-24 (citing R. 536-37, 562, 1341).) These records appear to support Dr. Xie's opinion with respect to schedule interruptions. *See Santiago Ortiz v. Comm'r of Soc. Sec.*, No. 19-CV-00538 (MWP), 2020 WL 5792968, at *7 (W.D.N.Y. Sept. 29, 2020) ("The medical record suggests that [the plaintiff's] migraines caused her to suffer severe pain for several hours at a time, undoubtedly affecting her ability to stay on task and maintain a schedule.").

The Commissioner argues that, in rejecting Dr. Xie's opinion, the ALJ cited the decisions from state agency consultants and psychiatric consultative examiner Dr. Rupp-Goolnick, who found that Plaintiff had no limitations in staying on task or maintaining attendance. (Comm'r Br. at 7-8.) However, the ALJ found Dr. Rupp-Goolnick's opinion unpersuasive and concluded that Plaintiff had greater limitations in concentrating, persisting and maintaining pace than those assessed by the state agency consultants. (R. 21, 25, 82, 94.) Moreover, the evidence cited by the Commissioner relates to limitations resulting from Plaintiff's mental impairments, not headaches. Because there is evidence in the record to support Dr. Xie's opinion, the Court agrees with Plaintiff that the ALJ was required to further explain her determination that Dr. Xie's opinion was not supported by the record. *See Carmen Julia A. v. Comm'r of Soc. Sec.*, No. 24-CV-04629

(GRJ), 2025 WL 831111, at *5 (S.D.N.Y. Mar. 17, 2025) (remanding where ALJ failed to discuss evidence contradicting conclusion that plaintiff's headaches were effectively managed and which supported opinion that plaintiff might experience schedule interruptions). The ALJ's conclusory assessment that Dr. Xie's opinion on schedule interruptions was not supported by the record, without considering how the opinion was supported by Dr. Xie's examination or other evidence in the record that was consistent with that opinion, precludes meaningful review and warrants remand. *See Jaleesa H. v. Comm'r of Soc. Sec.*, 580 F. Supp. 3d 1, 9 (W.D.N.Y. 2022) (conclusory analysis precluded meaningful review of ALJ's evaluation of opinion) (citing cases).

Plaintiff also argues that "the ALJ failed to explain how marked limitations in sitting, standing, walking, lifting, and postural activities are consistent with the ability to sustain even sedentary work." (Pl.'s Mem. at 15.) Many courts have found that moderate to marked limitations with respect to prolonged sitting, standing and walking are accommodated by limitations to sedentary work. *See Josielewski v. Berryhill*, No. 15-CV-00728 (MAT), 2018 WL 903471, at *4 (W.D.N.Y. Feb. 15, 2018) (moderate to marked limitations for prolonged sitting not inconsistent with ability to perform sedentary work); *Krysta K. v. Bisignano*, No. 24-CV-00614 (LGF), 2026 WL 2581606, at *9 (W.D.N.Y. Sept. 1, 2026) ("a marked limitation in walking is not inconsistent with sedentary work."). Similarly, courts have found that marked limitations in postural activities such as stooping are accounted for by limiting plaintiffs to occasional performance of such activities. *See Richard H., II v. Comm'r of Soc. Sec.*, No. 24-CV-01146 (PJE), 2026 WL 760216, at *5 (N.D.N.Y. Mar. 18, 2026) (quoting SSR 85-15, 1985 WL 56857 at *7) ("If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact.").

"However, other Courts have found that a physician's assessment that a plaintiff has 'marked' limitations is not necessarily consistent with an RFC limiting the Plaintiff to 'occasionally' performing those same activities[,]" *Jeffery A. v. Comm'r of Soc. Sec.*, No. 18-CV-01473 (CFH), 2020 WL 1234867, at *8 (N.D.N.Y. Mar. 13, 2020) (citing cases) (cleaned up), and that some further explanation by the ALJ is required. *See John T. v. Comm'r of Soc. Sec.*, 652 F. Supp. 3d 372, 377 (W.D.N.Y. 2023) (absent explanation as to how RFC finding was consistent with or supported by physicians' assessment of moderate to marked limitations as to those activities, court was unable to determine whether conclusion was supported by substantial evidence); *Edwards v. Comm'r of Soc. Sec.,* 16-CV-00948 (MJR), 2018 WL 5859518, at *5 (W.D.N.Y. Nov. 9, 2018) ("If the ALJ is in agreement that plaintiff has a marked limitation as to climbing stairs, remand is necessary for the ALJ to explain how a marked limitation in that area is consistent with occasional stair climbing.").

Because the Court finds that remand is required for further assessment of Dr. Xie's opinion with respect to schedule interruptions, the Court does not determine whether the opinions of Dr. Xie and Dr. Paz with respect to moderate to marked and marked limitations otherwise were sufficiently accounted for by limiting Plaintiff to a reduced range of sedentary work. On remand, the ALJ is encouraged to further explain how any marked limitations are accounted for in the RFC determination.

**II. <u>Consideration Of Plaintiff's Mental Impairments And Migraines</u>**

Plaintiff further argues that the ALJ failed to consider the limiting effects of her severe depressive disorder and severe anxiety disorder and failed to adequately address the functional impact of her migraines. (Pl.'s Mem. at 14- 17.) With respect to Plaintiff's mental impairments,

the Court agrees with the Commissioner (Comm'r Br. at 9) that here, unlike in *Nunez v. Comm'r of Soc. Sec.,* 164 F.4th 60 (2d Cir. 2025), a case relied upon by Plaintiff (see Pl.'s Mem. at 16), there are no specific opinions suggesting that moderate limitations in concentration, persistence and pace would require greater off-task or attendance limitations. However, with respect to migraines, the Court agrees with Plaintiff that further explanation is required.

The ALJ concluded that Plaintiff's migraines were accommodated by restrictions on climbing ladders, ropes and scaffolds and exposure to extreme bright lights, but failed to provide any explanation as to why symptoms of nausea, dizziness and photophobia would not result in time off-task time or other limitations. (R. 23-24.) Although the ALJ is entitled to weigh conflicting evidence in the record, the ALJ must adequately explain how she reached this conclusion. *See Megan S. v. Comm'r of Soc. Sec.*, No. 25-CV-00253 (HKS), 2026 WL 1481098, at *6 (W.D.N.Y. May 27, 2026) (remanding when ALJ failed to address whether plaintiff's migraines would result in absenteeism or off-task time that, according to VE testimony, would be work preclusive) (citing *Rivers v. Kijakazi*, No. 21-CV-00820 (JCM), 2022 WL 2901578, at *19 (S.D.N.Y. July 22, 2022) (holding that the ALJ's failure to analyze "the potential limiting impact" of plaintiff's migraines on her "attendance and ability to limit herself to normally scheduled breaks [ ] constitutes reversible error")).

Due to the errors identified above, remand is required.[8]

[8] Because the Court is remanding this case based upon the errors identified above, the Court does not address Plaintiff's arguments regarding step five. (*See* Pl.'s Mem. at 18-20.)

**CONCLUSION**

For the reasons stated above, Plaintiff's motion (ECF No. 10) is GRANTED, the decision of the Commissioner is reversed, and this action is remanded for further proceedings pursuant to sentence four of § 405(g). The Clerk of Court is respectfully directed to enter judgment and close this case.

Dated: New York, New York
October 16, 2026

Stewart d. Aaron
______________________________
STEWART D. AARON
United States Magistrate Judge